Good morning, Illinois, public court 1st district court is now in session. The 6th division, the honorable justice Sanjay T. Taylor presiding case number 23-0791 people versus Kenyatta McLaurin. Good morning, I thought we were going to be sharing a zoom platform with some other meeting today, but fortunately not so welcome. Um, if we're joined today, first of all, my name is Sanjay Taylor. I'm the presiding judge of the 6th division of the 1st district appellate court. I'm joined by my colleagues, Justice Michael Hyman and Justice Celia Gamrath. If I can have counsel introduce themselves and the way we'll proceed this morning is. Each side will have 20 minutes and the appellant can reserve whatever amount of that 20 minutes. She would like for reply or rebuttal. So, counsel for appellant. Good morning, your honors my name is Kara Curland on behalf of the appellant Kenyatta McLaurin and I will reserve 5 minutes for rebuttal. Good morning, your honors Susan Wobbekin on behalf of the people of the state of Illinois. Okay, um, good morning. I, I've been having some connectivity issues from my office here in the Atlantic building. I'm not quite sure why. So if I've. Disappear or don't say anything for a while. That is why it comes back on just takes a minute. So, um. Okay, Miss Curland, we'll begin with your argument. Thank you. May it please the court. In 2009, Kenyatta McLaurin pled guilty to aggravated unlawful use of a weapon, which I will refer to as Ag UUW. We know he pled guilty to Ag UUW because the court orally pronounced him guilty. Of Ag UUW and the minimum is issued that same day. Stated that he'd been adjudicated guilty of Ag UUW. 9 years later in 2018. The state used this Ag UUW conviction as we don't really need it. We don't really know that. In fact, it appears that the opposite is true. That wasn't the judgment spoke. Isn't that what happened? Your honor, I can see that the judge misspoke in some capacity, but I don't believe that means that the record was ambiguous and I will speak to that in a moment. So, in 2018, the state use this Ag UUW conviction. We know the facts. We know the fact. So, if you could explain why, if the judgment spoke. And that we should accept that, I mean, people misspeak. And it shows that everything else doesn't show that to be what happened there. Respectfully, your honor, I agree that the judgment spoke in some capacity, but I don't think that means that he was. Convicted of UUWF and the reason why I think the record isn't ambiguous and that it. Shows that he was convicted of Ag UUW in 2009. I think the clearest indication of that that I would like to point this court to. Was the courts admonishments as to the Florence possible sentence during the plea hearing. McLaurin was admonished twice by the court. That he could serve a sentence of up to 7 years. Now, in 2009, the maximum sentence sentence for Ag UUW class 2 was 7 years. The maximum sentence for UUWF class 2 was 14 years. So, we presume that the court knows the law and so the judge knew when admonishing McLaurin. Twice as to the 7 year sentence, but that 7 year sentence applied to argue. Not. So, consistent with that sentencing admonishment. Which the court repeated twice the trial court orally pronounced and guilty of. And the state didn't object the minimus subsequently reflected McLaurin's conviction. And critically, this proper conviction has been accepted by and relied upon the state. Relied upon by the state, the trial court and this very court. For the past 16 years, so where was that done? What do you mean for the past 16 years? You explain it. Yes, your honor. Well, he was convicted in 2009. The state used this predicate Ag UUW to charge and convict him with armed habitual criminal. He was charged in 2018. He was convicted in 2021. And for the past 16 years from 2009 until 2025. The state always accepted that this was an Ag UUW conviction. So, for that reason, the state should be stopped from arguing that McLaurin's 2009 conviction is not Ag UUW. So, this unobjected to finding of guilt. Of Ag UUW, it doesn't only control, but it's consistent again with McLaurin's minimus. And every subsequent court document relating to this 2009 conviction. Until this 2025 appeal, including most importantly, the McLaurin was charged in his armed habitual case. After having been convicted of Ag UUW. So, this court should exercise its discretion to judicially stop. The state's effort to avoid the consequences. Of charging according for conduct that cannot be constitutionally prosecuted. And just to reiterate, the state has conceded that if this is an Ag UUW conviction, that it's void of an issue. So, there are 5 factors. My understanding is that the state that the court admonished him. For a UUW, right? Yes, your honor. Yes, so there are 5 factors to consider when determining whether judicial estoppel applies to this case. I only, I only explicitly discussed 4 factors in my brief, but I want to clarify that all 5 factors are met here. And I did discuss the 5th factor on page 9 of my reply brief. So, I just want to take this time to go through those factors to more clearly discuss why they all apply here and why this court should apply judicial estoppel. So, the 1st factor is that the party to be stopped has taken. Do positions so, like I said, from 2009 until 2024. The state's position that was was on the form was convicted of. For the 1st time ever, the state now asserts that this 2009 conviction was for UUWF. The 2nd factor is that those positions are factually inconsistent. There are different crimes with different sentencing ranges. And 1 of those crimes, Ag UUW, as charged in McLaurin's 2009 case, has been declared unconstitutional and is void of an issue. The 3rd factor is that the 2 positions were taken in separate judicial proceedings. So, the state understood that McLaurin was charged and convicted of Ag UUW. When he pled guilty to Ag UUW, when he was tried for armed. To unlawful use of a weapon by a felon. Didn't he? No, your honor, he pled guilty to Ag UUW. And like I said, I mean, I don't where, where is that? I mean, the judge misspoke, but he was pleading guilty. I mean, I don't, I don't see that I don't see it. Where, where, where is this coming from? I mean, if you look at the, the indictment, right, where I, that's where you're, you know, the indictment said it was count 2, what we're talking about. Your honor, McLaurin's count 2 was Ag UUW. If you, if you go to the certified copy of his conviction as well, it lists that his count 1 was UUWF and his count 2 was Ag UUW. So, he was pleading guilty to Ag UUW. He was admonished as to the sentencing range for Ag UUW. The indictment list count 2 is unlawful use of a weapon by a felon. Is that right? The indictment. Is that right? Yes, the indictment. The indictment list count 2 is unlawful use of a weapon by a felon, right? The indictment is, it has the co-defendant's indictment listed as well. So, McLaurin's count 1 is UUWF, but his count 2 is Ag UUW, which is the indictment count 4, which the state has a nice explanation of that in their response brief. But it's consistent, this count 2 is consistent with the admonishment. But he was only found, he was found guilty, he was found, he pled guilty to count 2, not count 4, count 2. Which is his count 2. His, no, no, no, count 2 of the indictment, which was unlawful use of a weapon. So you're saying count 2, you're saying it's count 4? Is that how you're getting it? Yes, because the court even clarified his count 2. But you're, so your honor, my position is that it is not ambiguous. He was pleading guilty to Ag UUW. But even if this court disagrees, the state should still be a stop for making this argument. And a large part of that has to do with the armed habitual charge. So this is no longer about the Ag UUW plea. This is about the 2021 armed habitual conviction. And so, like I said, the state took two separate positions in separate judicial proceedings. So when he was tried for armed habitual criminal, he was predicated, it was predicated on Ag UUW. At his sentencing for armed habitual criminal, it was still predicated on this Ag UUW, and that was specifically discussed at his sentencing. And on direct appeal for this court, this court understood that this predicate was Ag UUW. So the state has only ever took this second new position before this court and this post-conviction appeal. The fourth factor in judicial estoppel is that the state intended the court to accept the truth of the initial factual position. So in the armed habitual case, the state intended that the trial court and this court on appeal accept the factual assertion that McLaurin's predicate was for Ag UUW. Now, the state intends for this court to accept the factual assertion that he pled guilty to UUWF and not Ag UUW, because they can see that if the predicate is Ag UUW, that it's void at an issue. So the state is attempting to sidestep this Ag ULAR issue so that this court will affirm the dismissal of McLaurin's PC. Now, the last factor is that the state gained a benefit from the initial factual representation. In fact, the state got two convictions out of its representation that McLaurin was charged and convicted of Ag UUW. To illustrate this, think about what would have happened had the state attempted to charge McLaurin with armed habitual criminal predicated on a 2009 UUWF conviction. McLaurin would have been found not guilty because there's no certified UUWF conviction on his record. So clearly the state gained a benefit from the initial representation that this 2009 conviction was for Ag UUW. The state's tactics here strike at the heart of the judicial assemble doctrine. The state used its initial position in McLaurin's armed habitual trial to secure a conviction by charging that McLaurin had a prior Ag UUW and proving that up with a certified copy of conviction. Then when the state was confronted with this constitutional infirmity of the Ag UUW offense that it chose to use in its charge, it deliberately changed its position to argue that McLaurin actually pled guilty to UUWF. So this court should judicially stop the state from pursuing this inauthentic tactic. Now, the last thing I want to emphasize is that this court shouldn't send this case down to second stage proceedings. Instead, it should vacate the Ag UUW, reduce the armed habitual charge and remand for resentencing. And so it shouldn't send this case to second stage proceedings because doing so will not even change the invalidity of the armed habitual conviction. So just to explain, even a finding that this Ag UUW predicate was actually UUWF, it doesn't change the result here because in his indictment, McLaurin was charged with armed habitual criminal, predicated on the Ag UUW conviction and the certified statement of conviction admitted at his trial to prove the predicate lists the Ag UUW conviction. The state does not dispute this. Instead, the state wants to swap out one predicate for another. And despite the fact that McLaurin argued in his opening brief that this maneuver is not legal, the state failed to respond. They forfeited that argument. And just three days ago, made a last minute attempt to circumvent this forfeiture with 15-year-old case law that doesn't even move the needle. So- Let me discuss, I read your response, but why don't you discuss, well, in your opening brief, you attacked the prior conviction as void, but you didn't mention the plea colloquy, the discussion of the 07-CR case in your statement of facts. Why didn't you discuss that colloquy in your statement of facts? Your honor, I understood the colloquy to be- I'm sorry. Confusing word. To be unambiguous, given the totality of all of the facts of the case of the charges, the conviction, the minimus, and everything in the armed habitual case, because let's remember, this is a post-conviction petition from the armed habitual case. And there isn't any fact in the entire armed habitual trial sentencing or direct appeal that had any indication that the predicate was in dispute. So I didn't think going into this case that it would be in dispute. It was quite a surprise to see the state's response that this undisputed predicate that had been a predicate for 15 years, all of a sudden was something different. So I didn't anticipate that that actually was an issue. So you agree that the AHC indictment elicited the proper case number, and so did the certified copy of the prior conviction? Is that right? Yes, all for IUW. It was all proper, and none of that was disputed at trial. And I want to point out that the state had ample opportunities at trial to fix this error if there was one, because the court specifically asked the state numerous times if there was an Aguilar issue, if there was any issues with the predicate, if there was anything wrong with the PSI. And in the PSI, it specifically listed the IUW predicate. So when reading this armed habitual record, there would be no indication that anything was actually wrong, because both parties were adamant that nothing was wrong. And if there was, there would have been an opportunity to fix it. So what's in the record that the prior plea proceeding supports your position that your client pleaded guilty to something other than UUWF? The finding of guilt for IUW, the mitimus, the fact that they charged McLaurin in this armed habitual case predicated on Ag UUW, the totality of the entire record proves that this was an Ag UUW. But I want to emphasize to this court that even if you do agree that it's ambiguous and that this should go to second stage proceedings, that wouldn't change the impact of the invalidity of the armed habitual charge. And so this is getting to the state's emergency motion to cite 15-year-old case law. Even if this court does consider Adams, it doesn't change the fact that McLaurin's armed habitual conviction is invalid because to prove the elements of armed habitual, the state entered a certified copy of McLaurin's Ag UUW conviction into evidence. So even if McLaurin's armed habitual indictment is retroactively amended to reflect a UUW predicate, the evidence at his trial couldn't even support that charge because the evidence to prove his predicate conviction in 2009 was for Ag UUW, not UUWF. So you don't believe that Adams is similar to this case? Correct. Yeah, I don't think it really has any bearing on this case because the evidence used to prove McLaurin's guilt of armed habitual criminal was the Ag UUW certified copy of conviction. You can't retroactively change that evidence. So even if you can retroactively- Carolyn, you are 15 minutes into your argument. I don't recall how much time you reserved for rebuttal. Five minutes, your honor. I can very quickly wrap this up. So just to, just given all of the complexities of the state's arguments, most of which they have forfeited, the neatest way to handle this case and the only way to maintain fairness and finality is to find that McLaurin's 2009 conviction for Ag UUW is just that, Ag UUW. This court should vacate this void conviction, reduce his armed habitual conviction to UUWF and remand for resentencing. I have one question. Are you abandoning your alternative argument? No, your honor. So if you're not abandoning it, tell me how you get around Knapp. Tell me why you did not cite Knapp in your opening brief and tell me why you did not even discuss Knapp in your reply brief after the response cites Knapp, which is, as you know, a Supreme Court of Illinois case, 2020, that we need to follow. Your honor, I am unfamiliar with Nantz. I'd be happy to- K-N-A-P-P.  Yeah. Knapp. Oh, sorry, your honor. Yes, I believe I did cite Knapp. I did not cite Knapp. No, I did a search, a word search in both your opening and closing brief. And Knapp is cited in an attachment in your reply. And it's only four paragraphs away from something you cite in Fox, which you attach. So if you read Fox, you knew it was there and it says exactly what happened in this case. So again, I assumed you were abandoning it because you didn't discuss Knapp and you didn't discuss it now. But if you're telling me that you want us to consider it, is that your position? Yes, your honor. And tell me how you have not violated the rules of professional conduct by ignoring a direct precedent with regard to the issue before the court. Your honor, I don't believe that Knapp is dispositive because it expressly limited its reasoning to the facts. It has a lot of language that it is very limited to the record in that case. So that would be one reason. And the second is- But you didn't even respond to it. You didn't even say that in your reply. You have never responded to Knapp. And to me, when you don't respond to something, that is indicative of something, as you're saying about the other side. Yes, your honor. Well, if you do believe that the lack of response is indicative and you don't find the second issue is meritorious, then you still have the relief for the first issue. I understand. You're still- Yes. I understand your position. Yes. Thank you, Ms. Carlin. Ms. Wobbekind for the state. May it please the court, counsel. Am I pronouncing that correctly? Is it Wobbekind? You're close, it's Wobbekind. Wobbekind. All soft vowels, yeah. Your honors, I will orally respond to the first issue since that's what counsel argued. But if you have any questions for me regarding the second, of course, feel free. Can I ask you one question in a second? We can get rid of it right away. Counsel said that it doesn't apply.  Yeah. What is your position? Well, as you indicated, Knapp is a Supreme Court case. The facts are virtually identical to the facts in this case. The defendant here and the defendant in Knapp, both affirmatively indicated to the court after being admonished by the court and after the alleged conversation with counsel that he was voluntarily giving up his right to a jury and that he had not been threatened in any way to do so. So Knapp is absolutely applicable here and I believe very, very persuasive. Thank you. I'll just touch quickly on the estoppel argument just to get that out of the way. Counsel has stressed those five factors. Quickly, that fourth factor, first of all, I'm not gonna spend a lot of time on the factors, but that fourth factor, it was not the people's position. We did not want the court to believe that defendant had an AUUW. We wanted him to believe that that one element of AHC was proven and that was that he had two predicate offenses. Didn't matter if it was AUUW or any other predicate offenses as long as it came from one of those enumerated categories. And that was what we were proving. It just so happened at the time that the minimus showed it was AUUW. But that was not the crux of what the people had to prove to prove him guilty of AHC. Second, as to the estoppel argument, counsel's ignoring the whole second step of it that if the court finds that all five requirements are met, the court still needs to find that the party, by clear and convincing evidence, that the party did misrepresent to the court on purpose and that it was not a case of mistake or some sort of error. And in this case, the record shows, there is nothing in the record to say, to show that it was, we were, that the prosecution was clearly attempting to deceive the court. And in fact, the record shows that the prosecutor at the trial court was perhaps a little confused because he said, no, it's not an AGULAR situation because it's a count two AUUW, which when AGULAR came out, that was the case. Courts weren't sure if it applied to all AUUWs, sorry, class two, not count two, class two. And when AGULAR first came out, it was not clear whether it applied to all class felonies or only the class twos. So, and he repeatedly said he had investigated the issue and it wasn't AGULAR. And so there's just no evidence that this was intentional deceit. Thank you. Counsel spent time talking about count two of the indictment versus his count two. So can you clarify that because it's my understanding that the co-defendants count one was, what was the co-defendants count one versus McLaren's count one and McLaren's count two? Right. So co-defendants count one was UUWF. McLaren's count one, which was labeled as count two in the indictment was UUWF. Counts three and four respectively were AUUW. So when the court first began the plea proceedings, the court confirmed that defendant was pleading guilty to count two and co-defendant count one, which corresponds with their UUWF charges. The court then read to co-defendant, the court explicitly said co-defendant was being charged with UUWF. Read all the elements of UUWF to co-defendant and then turned to McLaren and said, you are also being charged with and mirrored the exact language he read to co-defendant, which was also the exact language in the UUWF charge in the indictment. There was no language that corresponds with the AU, well, not no, but the AUUW critical language of that the gun was uncased, unloaded, immediately accessible was never spoken by the court. There was no reference to those elements or any reference to count three or count four. And some facts that we didn't touch on, and I know you know the facts of the case, but I just also wanted to say the court questioned why the men were receiving different sentences, which implies that they were pleading to the same offense. The court referenced a singular offense when advising them of the, when admonishing them of the sentencing ranges, it said for this offense when he admonished both defendants and he pronounced them guilty of the same offense. And counsel says it's counsel's position that the co-defendant was properly found guilty of UUWF, but you can't have it both ways. And also the trial court, when the court found them guilty, he said, I find you, he accepted the plea and it's pretty clear the plea was to UUWF. And then he said, I find you guilty as charged in co-defendants count one and defendants count two, which is also defendants count one. Can I, the law in Illinois, as I understand it, is Illinois is one of the states where the words of a judge with regard to a judgment take precedence over anything in writing. Is that your understanding? Yes, I do. In this case, if something is wrong in the minimus, or in any other piece of paper, we would look at the words that were used in court to determine what happened. And isn't that what you're suggesting here? Yes, I do agree with that. However, I'm suggesting that we need to look at all the words of the court as opposed to- Well, yeah, I mean, I'm not saying we limit the words. It's the words that dictate the judgment, not what's in the writing. Correct, the writing should only stand if it's consistent with the intent of the court. Of the court, and the intent is you're saying we need to look at everything that went on at that day. Yes, yes. What about counsel's argument that went in sentencing the court gave a range up to seven years versus 14? I would say that the court, I didn't look as closely at that because again, everything surrounding it, there was never a mention of counts three and four or of the ag UUW. Everything pointed to that the court was discussing the UUWF. And that sentence, as I said, I didn't look as closely at that, but that sentence may have been, defendant has a lot of prior convictions. So there may have been something else at play other than just that straight sentence, statutory sentence for the AUUW or UUWF. So, oh, and then as to, so the people are not asking this court to substitute one predicate offense for the other in the minimus because that original 2007 minimus sufficed. Oh, and, no, I'm sorry. I'm confusing myself with all the different proceedings. We're not asking to substitute UUWF with AUUW in the minimus for the AHC because that AHC minimus sufficed to charge him with the elements, all the elements of AHC so that the actual particular name of the offense was not what the people had to prove. And here, whether the court was aware when it found defendant guilty of the AHC that defendant had two prior qualifying predicate offenses from the statutorily enumerated categories. And that's what's important. And also to the court, when sentencing defendant on the AHC also discussed his prior criminal history and was aware that defendant had other prior qualifying offenses. Including possession of a controlled substance. And also it's interesting when the court found defendant guilty of AHC, he said he found him guilty because he possessed, excuse me, possessed a firearm after having been convicted of AGBAT and UUWF, not AUUW. So for those reasons, we ask that this court deny defendant's request to vacate the AHC and order the clerk of the court to correct the minimus in the 2007 case and affirm the trial court's summary dismissal of defendant's pro se conviction in this case. And so let me ask you, you want us to order a correction to the minimus? What would that look like? So for clarification purposes, just to order the court to correct that minimus in the 2007 to reflect that defendant was convicted of the UUWF and not the AUUW. Is that in your, I don't recall seeing that in your brief. Am I wrong? It may not have been in our original brief. It's not in there. I mean, I didn't read it. Yeah. So, but based on your argument, that's not necessary. Correct, it's not necessary. We haven't asked for it here before, so.  Yeah. I mean, I'm just asking the question. Right, yeah. I don't know why Justice asked why, what that has to do with it. It was for clarification purposes going forward, but you're correct. I thought I had put it in our motion to cite additional authority, but I did not, yes. So, and it's not necessary. I mean, that's your argument. Your argument is it's not necessary. I mean, if it's necessary, that's a, if we should consider that, we'll just say. Right, but right. It's not necessary to correct either the indictment or the minimus at this time. And then, excuse me. Any more, I'm sorry, were you finished? I was just gonna ask if you have any questions as to this second issue for me. Any more questions of counsel? Okay, thank you. Thank you. Ms. Kerlin. Yes, thank you, your honors. I just have a few quick points I want to address. The first, Justice Gamrath, you asked opposing counsel about the seven-year sentencing admonishment. And counsel's answer was that everything pointed to UUWF, but the whole point is that the sentencing admonishment pointed to AGUW. So that answer is completely contradictory. It doesn't make sense. I'll explain that because the admonishments to the co-defendant were not, seemed to be, had nothing to do with AA. Right? The admonishments, the sentencing admonishments told both co-defendants that the maximum was seven years. That is- That's what I'm talking about, but, well, you disagree with what counsel stated was the colloquy? Are you disagreeing that it doesn't actually say what it says? Is that what you're telling us? I think that it says that he was convicted of AGUW, pled guilty to AGUW, and the sentencing admonishment proves that because that sentencing admonishment only applied to AGUW, not UUWF. The next point I want to address, the state's position is that the predicates in the armed habitual case don't matter. The fact that the indictment alleges a particular conviction doesn't matter. But at the end of the armed habitual trial, McLaurin, he was charged with multiple crimes, but only found guilty of armed habitual criminal because it was the only charge where the states proved those predicates. So there were all these other charges at this bench trial where the court found him not guilty because they didn't introduce the proper predicates. And when the judge considered whether or not he has other predicates, can I swap these out? The judge said, no, the charge is what the charge is. They only introduced this particular predicate that could only satisfy the armed habitual conviction and none of the other convictions because the other conviction, other charges didn't use the AGUW. They used other predicates that weren't introduced. So the idea that the predicates introduced at the armed habitual trial don't matter is ludicrous. It's really rebuttable. Now, before you talk about being ludicrous, as I understand it, the judge, and I'm quoting, count one, each defendant, counsel for the state reply, the court asked, which count, they have different counts. And the counsel for the state replied, count one, each defendant. And the court then corrected her and said, no, count one on co-defendant, count two on McLaurin. Now, count two is definitely the UUWF. So again, we know the minimus is incorrect. The writings are incorrect. The state laws, I just gotta, tell me if you don't agree with the law, but the Illinois Supreme Court has ruled that it's the oral ruling, not the writing, that controls. You agree with that? Yes, I do agree with that because the oral pronouncements said AGUW, but I also, I'm not talking about this 2009 plea hearing. I'm talking about the armed habitual case in 2018 that was tried again. But that's why we have to go back because there was an error back in 2007. So that's the important one. I know, I understand what you're starting to say, you know, that they're stuck with that, but their position is, no, there was an error. And that's what we've been talking about. So if we go back to that 2007 hearing, is there any way you win? Yes, Your Honor, for multiple reasons. One, because I believe it was AGUW, but even if you disagree, the state should be stopped for those five reasons I discussed. And I also wanna discuss, the state said that there needs to be even higher burden, that the court still needs to find that a party acted intentionally to mislead the court and that the trial, that the state at the time was simply confused because AGUW only discussed class four offenses. But in Burns, a 2015 case, they said that AGUW applies to class two offenses. McCormick's trial was in 2018. So the fact that the trial judge didn't think that it applied because it was a class two offense as opposed to class four, is not supported by the law at all because the state should have known that years ago. So, this case is gonna turn on what happened in 2007. That's the issue here, right? That's the issue. You seem to be keep going to 2018. I just wanna make sure I give you every opportunity, but I don't understand why we would ignore what happened in 2007. Because of estoppel, Your Honor, because they- So where have you shown that they were in bad faith? Where is it? Your Honor, in the state's reply brief. No, no, I'm talking about you, not any reply brief. They filed a response. But I'm talking about you. Where in the record is anything about the bad faith? In the armed habitual case, the state had ample opportunity to correct any mistake, but they continually said that this was an AGUW- Predicate- They didn't know it was a mistake. That's what they've said. Have you shown it to be anything other than a mistake? That's my question. I think the fact that they benefited from this representation for the past 16 years and only now are changing their position does show bad faith. If it's a mistake, it's a mistake. I mean, you still have to, you can't assume it was a bad faith. I'm just asking if there's anything you know of in the record that would indicate it was something other than a mistake. Anne, to do so by clear and convincing, because I believe that's the standard, correct? Yes, that is the standard. I think I'll just go back to the fact that the state constantly said that this was not an AGUW issue. This was AGUW. I think to me, that shows that standard. But even if the court isn't compelled by this argument, I just, again, wanna reiterate that changing what this predicate was does not change the invalidity of the armed habitual conviction because evidence was introduced that he had a predicate AGUW. So you cannot retroactively go back and change that evidence. If you retroactively change the indictment, that means that the state failed to meet their burden because these predicates do matter. The trial court completely understood that the predicates matter, which is why he found McLaurin not guilty on the other charges because the state did not meet their burden to prove the respective predicates in the other charges. So I just want to quickly wrap up because I am out of time. And I just wanna take this last moment to emphasize the implications of the state's strategy before this court and why judicial estoppel is necessary because the state's strategy of transforming this uncontested conviction that has been accepted, used in subsequent proceedings and relied upon for 16 years, it flips the concept of finality on its head and it opens the door the state and defendants alike to question the nature of any conviction at any given time. I believe this court should have stopped the state from doing so. And I am respectfully asking that this court vacate the Aguilar-Aguiw, reduce the armed habitual conviction to UUWF and remand for resentencing. Thank you. Okay, thank you, counsels. Thank you for your briefs and your arguments this morning. The case is submitted. The court will issue a decision in due course. Thank you.